# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| PATRICK M., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 1:18-cv-497-NT |
| | ) | |
| ANDREW M. SAUL, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON SOCIAL SECURITY APPEAL

This Social Security Disability and Supplemental Security Income appeal raises the question of whether the Administrative Law Judge ("**ALJ**") supportably found that, despite the Claimant's severe impairments, he retains the residual functional capacity ("**RFC**") to perform substantial gainful activity. The Claimant seeks remand on the grounds that the ALJ erred in his assessment of the medical expert opinion evidence and that the ALJ's RFC finding is otherwise unsupported by the record. Compl. (ECF No. 1); Pl.'s Statement of Errors (ECF No. 12). Following a review of the record and after consideration of the parties' arguments, I **AFFIRM** the administrative decision.

## ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the May 2, 2018 decision of the ALJ. R. 146-159.[1] The ALJ's decision tracks the five-step sequential evaluation process for

---

[1]     Citations to "R. __" refer to the page numbers of the consecutively-paginated administrative record, available at ECF Nos. 9-1 to 9-9.

analyzing social security disability and supplemental security income claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that the Claimant has severe, but non-listing-level,[2] depressive disorder, personality disorder, and post-traumatic stress disorder. R. 152. The ALJ determined that the Claimant retains the RFC to perform work at all exertional levels, with non-exertional limitations that allow him to, on a sustained, competitive basis, "(1) understand and remember simple instructions, (2) use judgment in making simple, work-related decisions, (3) respond appropriately with coworkers, supervisors, and [in] usual work situations not involving the public, and (4) adapt to routine changes in the work setting." R. 154. The ALJ further found that the Claimant's RFC allows him to perform past relevant work as a concrete laborer or, alternatively, other work existing in significant numbers, including the representative job of cleaner. R. 158. The ALJ therefore concluded that the Claimant was not disabled during the relevant period. R. 158.

## STANDARD OF REVIEW

A court must affirm an administrative decision provided it is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of*

---

[2]   When a claimant's impairments meet or equal the criteria for an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and meet the duration requirements set out in 20 C.F.R. § 404.1509 and 416.909, the claimant is deemed disabled without further assessment. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

*HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

The Claimant argues that the ALJ committed three errors in his assessment of the record that necessitate remand, specifically that (i) the ALJ failed to assign sufficient weight to opinion evidence from the Claimant's medication provider, Destry Oldham-Sibley, (ii) the ALJ erred in assigning any weight to the opinion of agency expert Dr. Thomas Knox, and (iii) the ALJ made a series of factual errors in his review of the record that undermine his RFC finding. Finding no error, I affirm.

## I. First Claim of Error

The Claimant first argues that the ALJ erred in assigning little weight to Ms. Oldham-Sibley's March 21, 2018, Medical Source Statement. R. 788. In her statement, Ms. Oldham-Sibley opined that the Claimant was capable of understanding, remembering, and carrying out simple instructions and had only mild limitations in his ability to make judgments on simple work-related decisions. R. 788. In contrast, Ms. Oldham-Sibley stated that the Claimant had marked limitations in his ability to understand, remember, carry out, or make judgments related to complex instructions or work-related decisions. R. 788. She found no limitations in the

Claimant's ability to interact appropriately with supervisors, co-workers, and the public or to adapt to routine changes in the workplace. R. 789. Ms. Oldham-Sibley further reported that the Claimant's mental limitations would lead him to be off-task for 25% or more of an ordinary work schedule and to be absent from work four days or more per month. R. 791. She noted that the Claimant "avoids being around people," "isolates himself, avoids interaction, has low energy," "engages in self-harming behaviors, has urges to cut, []is preoccupied by suicidal ideation, . . . is chronically in low dysphoric mood," and "presents with depressive symptoms." R. 789. When asked whether alcohol or substance misuse contributed to the Claimant's described limitations, she reported that "alcohol or drug use is not a presenting problem." R. 789.

The ALJ gave little weight to Ms. Oldham-Sibley's opinion that the Claimant would have a 25% absenteeism rate because he found that it conflicted with the Claimant's treatment records and demonstrated level of activity. R. 157. The ALJ also stated that "in view of her apparent ignorance of the claimant's marijuana use," he would not "give strong credence to [Ms. Oldham-Sibley's] assertion that drug use was 'not a presenting problem.' " R. 157.[3]

---

[3] In his Statement of Errors, the Claimant contended that Ms. Oldham-Sibley was a treating medical source. Pl.'s Statement of Errors 8 (ECF No. 12). The Claimant withdrew this point during oral argument, acknowledging that, as a nurse practitioner, Ms. Oldham-Sibley is not a medical source as that term was defined in the regulations applicable at the time that the Claimant filed his claim. 20 C.F.R. §§ 404.1513(a), 416.913(a). The ALJ was therefore not required to give "good reasons" for discounting Ms. Oldham-Sibley's opinion. *Debbie T. v. Soc. Sec. Admin., Comm'r*, No. 1:18-CV-00244-DBH, 2019 WL 1234318, at *3 (D. Me. Mar. 18, 2019), *report & recommendation adopted sub nom. Debbie T. v. Berryhill*, 2019 WL 1460859 (D. Me. Apr. 2, 2019).

I find the ALJ's assessment of Ms. Oldham-Sibley's opinion to be sound and supportable. Regarding the Claimant's potential absenteeism, as the ALJ noted, the Claimant routinely "attends appointments without truancy, including required visits with his probation officer and court mandated group therapy, despite the lack of a drivers' license." R. 152, 155, 714-87, 894, 898. The ALJ also supportably observed that the Claimant's activity level is inconsistent with the conclusion that he would routinely be unable to attend work. The record shows that the Claimant has: (i) retained a small group of long-term friends with whom he spends time when his treatment center is closed, (ii) pursued two romantic relationships, and (iii) regularly—albeit not daily—attended treatment venues where he has interacted with other clients and taken on a variety of volunteer activities without issue. R. 153, 155, 411, 414, 419, 422, 599, 615, 620, 710, 716, 755, 777, 782, 894. Given this evidence, the fact that the Claimant has at times failed to meet his voluntary treatment goal of spending six hours a day, five days a week at a treatment center did not preclude the ALJ from concluding that the Claimant could and would attend work as required.[4]

As to the Claimant's ability to remain on task, the Claimant's treatment records repeatedly report his concentration level as "fair" or "good," and, as the ALJ

---

[4]     The ALJ's decision to give little weight to Ms. Oldham-Sibley's opinion on absenteeism was also appropriate because she offered that opinion by checking boxes on a standardized form without providing any explanation of her selections. R. 791; *see* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion . . . the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."); *see also Padilla v. Barnhart*, 186 F. App'x 19, 22 (1st Cir. 2006) (ALJ erred in crediting one medical opinion over another, where credited opinion was "more conclusory and consisted entirely of checked boxes on the forms, without narrative or explanation").

found, the Claimant retains the degree of concentration or persistence necessary to carry out simple daily tasks such as shopping, counting change, running errands, paying bills, and managing a bank account. R. 615, 620, 626, 630, 634, 638, 643, 649, 794, 799. Consistent with this evidence, agency psychologist Dr. Richard Parker concluded that the Claimant was capable of simple, repetitive work after a one-on-one consultative examination. R. 600. The Claimant points to some other evidence, specifically notes from the Claimant's caseworker Katie Moran, that suggests he has difficulty concentrating. R. 418, 423. As with Ms. Oldham-Sibley's testimony, it was the ALJ's duty to weigh this evidence against the entire record. *Rodriguez*, 647 F.2d at 222 ("[T]he resolution of conflicts in the evidence . . . is for [the ALJ], not for the doctors or for the courts."); *see also Malaney v. Berryhill*, No. 2:16-cv-00404-GZS, 2017 WL 2537226, at *2 (D. Me. June 11, 2017) ("The mere fact that a claimant can point to evidence of record supporting a different conclusion does not, in itself, warrant remand.") *report & recommendation adopted* No. 2:16-CV-00404-GZS, 2017 WL 2963371 (D. Me. July 11, 2017), *aff'd*, No. 17-1889, 2019 WL 2222474 (1st Cir. May 15, 2019). For the same reasons stated above, the ALJ's assessment of the Claimant's ability to maintain concentration survives scrutiny despite Ms. Moran's observation.[5]

The ALJ also questioned Ms. Oldham-Sibley's report because of her apparent lack of knowledge of the Claimant's drug use. Ms. Oldham-Sibley's treatment notes

---

[5] The Claimant also points to his own testimony as evidence of his inability to attend work or to concentrate. Pl.'s Statement of Errors 2. The ALJ thoroughly and supportably assessed the consistency of the Claimant's testimony regarding the severity of his impairments and found it lacking. *See* R. 155-156.

support the ALJ's assessment. While Ms. Oldham-Sibley's October and November 2017 notes referenced the Claimant's entry into an intensive outpatient program ("**IOP**"), R. 625, 629, her notes do not indicate that she had any awareness that the Claimant smoked "up to four bowls of weed" during the run of his IOP. R. 777. Additionally, in treatment notes associated with her March 21, 2018 report, Ms. Oldham-Sibley states that the Claimant has been "sober since March 2016." R. 793.[6] The ALJ could reasonably conclude from these notes that, for whatever reason, Ms. Oldham-Sibley was not aware of the extent of the Claimant's drug use. Moreover, regardless of whether Ms. Oldham-Sibley was aware of the Claimant's October 2017 use, it is difficult to square her knowledge that the Claimant had just completed IOP at the end of November 2017 with her notation just four months later that "drug use was not a presenting problem" for the Claimant.

## II.    Second Claim of Error

The Claimant next argues that the ALJ should have afforded little weight to Dr. Knox's August 17, 2017, Mental Residual Functional Capacity Assessment of the Claimant because Dr. Knox rendered that assessment without the benefit of records from the Claimant's treatment sessions with Ms. Oldham-Sibley and with Ms. Moran. "[T]he amount of weight that can properly be given the conclusions of non-testifying, non examining physicians will vary with the circumstances, including the nature of

---

[6]     The Defendant concedes that the ALJ's statement that the Claimant's December 2016 hospitalization for thoughts of self-harm was precipitated by substance abuse is not supported by substantial evidence. Def.'s Opp'n 5 n.4 (ECF No. 16). This error does not leave the ALJ's assessment of Oldham-Sibley's report unsupported, as the ALJ offered other valid reasons for discounting Ms. Oldham-Sibley's testimony.

the illness and the information provided the expert." *Rose v. Shalala,* 34 F.3d 13, 18 (1st Cir. 1994) (citations and internal quotation marks omitted). "[T]here is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC." *Dudley v. Astrue*, No. 2:11-CV-443-NT, 2012 WL 5267555, at *3 (D. Me. Sept. 30, 2012), *report & recommendation adopted*, No. 2:11-CV-00443-NT, 2012 WL 5267549 (D. Me. Oct. 23, 2012). However, courts in this Circuit have found that an ALJ may rely on a non-examining expert's opinion that is based on older records if "the older evidence 'remains accurate,'" including where "(1) there are not direct contradictions between the reports, such that the newer evidence is essentially cumulative of the older evidence, or (2) the newer reports show some measure of improvement in the claimant's condition." *Blackette v. Colvin*, 52 F. Supp. 3d 101, 114 (D. Mass. 2014) (quoting *Abubakar v. Astrue*, No. 1:11-cv-10456-DJC, 2012 WL 957623, at *12 (D. Mass. Mar. 21, 2012)); *see also Ferland v. Astrue*, No. 11-CV-123-SM, 2011 WL 5199989, at *4 (D.N.H. Oct. 31, 2011) ("[The] ALJ may rely on [an opinion based on older medical information] where the medical evidence postdating the reviewer's assessment does not establish any greater limitations, or where the medical reports of claimant's treating providers are arguably consistent with . . . the reviewer's assessment."); *Dudley*, 2012 WL 5267555, at *3 (when determining the weight to assign to a non-examining expert's conclusions, "[f]actors to be considered include . . . whether portions of the record unseen by the consultant reflect material change or are merely cumulative or consistent with the preexisting record").

Dr. Knox prepared his assessment based on medication records from Maine Dartmouth Family Practice, treatment records from during and after the Claimant's hospitalization at Maine General Medical Center, and the report from Dr. Parker's consultative examination of the Claimant. R. 259-266. Like Ms. Oldham-Sibley, Dr. Knox opined that the Claimant was able to understand and remember simple instructions, carry out simple tasks, adapt to simple, routine changes, and interact appropriately with co-workers and supervisors. R. 264-265. However, Dr. Knox found that the Claimant was not significantly limited in his ability to perform activities within a schedule, maintain attendance, or be punctual, or in his ability to sustain an ordinary routine without special supervision. R. 264-265.[7] The ALJ credited Dr. Knox's opinion, finding it to be consistent with the Claimant's entire treatment record. R. 156.

The ALJ did not err in assigning weight to Dr. Knox's opinion. While the new treatment records produced by Ms. Oldham-Sibley and the Claimant's other providers were more granular in some respects than those provided to Dr. Knox, the Claimant points to no material inconsistencies among the older and newer records as they relate to the severity of the Claimant's limitations. For example, while the Claimant emphasizes Ms. Oldham-Sibley's and Ms. Moran's observations that the Claimant experiences severe depression and suicidal ideation, has fluctuating moods, and engages in self-harm, Pl.'s Statement of Errors 11-13, similar notes appear in the

---

[7]     Dr. Knox also found that the Claimant was limited in his ability to interact appropriately with the public. R. 265.

treatment records from Maine General Hospital and Maine Dartmouth Family Practice that Dr. Knox reviewed. R. 547-549, 574, 583-584, 590, 595. Tellingly, although Ms. Oldham-Sibley prepared the bulk of the newer treatment records, her assessment of the Claimant's capacity differed from Dr. Knox's only on the issues of potential absenteeism and concentration. As discussed above, the ALJ supportably found that those portions of Ms. Oldham-Sibley's report were contradicted by the complete record.

### III.    Third Claim of Error

As his final argument, the Claimant asserts that the ALJ made four factual errors in rendering his opinion, and that as a result the ALJ arrived at an RFC that was not supported by substantial evidence. Pl.'s Statement of Errors 14-16. I have already determined that in formulating his RFC, the ALJ properly credited Dr. Knox's expert opinion after finding that opinion to be consistent with the entire record. Accordingly, I find that the reported RFC was supported by substantial evidence. In the interest of completeness, however, I briefly address the Claimant's miscellaneous assignments of error.

First, the Claimant argues that the ALJ erred by stating that the Claimant's fifth hospitalization for thoughts of self-harm was precipitated by polysubstance abuse. As I have already found, *see supra* note 6, even if this statement was erroneous, that error did not undermine the ALJ's decision to credit Dr. Knox's opinion over Ms. Oldham-Sibley's.

Second, the Claimant argues that the ALJ incorrectly found that after the Claimant was discharged from psychiatric treatment in December 2016, he

10

"improved rapidly, maintained a medication regimen and adhered to scheduled outpatient therapy and counseling." Pl.'s Statement of Errors 14 (quoting R. 156). I find the ALJ's statement to be supported by the record, which shows that following his release the Claimant (i) kept his treatment appointments, (ii) engaged appropriately with his providers, (iii) maintained several close personal relationships, (iv) had no persistent issues with medication adherence, and (v) was never re-hospitalized.

Third, the Claimant asserts that the ALJ erred when he found a discrepancy between the Claimant's BMI of 38 and the Claimant's self-reported appetite disturbance. To the extent that this was error, it was harmless. The ALJ found numerous other inconsistencies in the Claimant's testimony that undermined the Claimant's reports about the severity of his symptoms, and the Claimant does not dispute the existence of those other discrepancies.

Finally, the Claimant faults the ALJ for failing to discuss the Claimant's suicidal ideation and self-harm at greater length. The Claimant's precise argument is unclear. To the extent that he means to suggest that the ALJ failed to account for the Claimant's mental health history, that is false. The ALJ addressed the Claimant's five psychiatric hospitalizations in his opinion, R. 156, and the Claimant acknowledges that the ALJ made note of his history of self-harm during the hearing below. Pl.'s Statement of Errors 15. The ALJ also relied on the decision of Dr. Knox, who considered the Claimant's hospitalization history when analyzing the Claimant's RFC. *See* R. 246. If the Claimant instead intends to argue that the ALJ was required

to arrive at a more restrictive RFC because of the Claimant's mental health history, the Claimant fails to explain why this is the case.[8]

## CONCLUSION

For the reasons stated above, I **AFFIRM** the administrative decision. I **ORDER** that the Claimant's Complaint be **DISMISSED**.


SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 23rd day of August, 2019.

---

[8]     Because the ALJ's RFC finding is supported by substantial evidence in the record, the Claimant's argument that the ALJ erred at Step 5 of the process fails.